NORTHERN INDIANA POWER COMPANY *v.* WEST, ADMX.

[No. 27,479. Filed March 26, 1941.]

322

324

*Barrett, Barrett & McNagny* and *Leigh L. Hunt,* all of Fort Wayne; *Gates & Gates,* of Columbia City, and *Evans & Hebel* and *O. S. Boling,* all of Indianapolis, for appellant.

*Bloom & Bloom,* of Columbia City; *Donald R. Mote,* of North Manchester, and *Oscar F. Smith,* of Indianapolis, for appellee.

SHAKE, J.—The first question presented by this appeal is revealed by a statement of the facts taken from the record. Harry O. West met his death by an accident arising out of and in the course of his employment as the servant of the Northern Indiana Telephone Company. He was survived by his widow, with whom he was living at the time of his death, and their five children, all under nine years of age, one of whom was posthumous. This action was brought by the widow, as administratrix of her husband's estate, for the use and benefit of herself and her children, upon the theory that her husband's death was proximately caused by the negligence of the appellant. During the pendency of the action in the court below, the appellee, in her individual capacity, joining with her children,

made claim against the telephone company before the Industrial Board of Indiana for death benefits under The Indiana Workmen's Compensation Act of 1929. Acts 1929, ch. 172, § 40-1401 et seq., Burns' 1940 Replacement, § 16412 et seq., Baldwin's 1934. The last-mentioned proceeding resulted in a final award of compensation in favor of the claimants and against the telephone company. The compensation awarded was not paid, but the Travelers Insurance Company, which carried the employer's risk, brought suit against the appellant to recover the amount for which said insurance company was made liable, and that action is pending.

The appellee contends that the remedies provided by the Compensation Act are merely cumulative and do not preclude recovery from a third party tort-feasor under the wrongful death statute, except upon the single contingency that compensation benefits have been accepted by the claimants. The appellant asserts, on the other hand, that since dependents have the right under the statute to elect whether they will take compensation or collect damages from the responsible tort-feasor, and since dependents under the Compensation Act are not necessarily the same persons as those for whose benefit an action may be prosecuted under the wrongful death statute, the personal representative of a decedent's estate cannot maintain such an action as that with which we are presently concerned. In other words, the appellant says that the appellee is not the real party in interest.

It has long been the settled policy of this state that "every action must be prosecuted in the name of the real party in interest." § 2-201, Burns' 1933, § 16, Baldwin's 1934. The only exception to this rule that need be noted here is that "an executor, administrator . . . may sue without joining with

him the person for whose benefit the action is prosecuted." § 2-202, Burns' 1933, § 17, Baldwin's 1934. To determine whether the appellee is the real party in interest as to the subject-matter of this litigation requires a consideration of the statutes and decisions pertaining to actions of this kind.

Our wrongful death statute provides that such an action shall be prosecuted by the personal representative of the decedent and the damages (except as to certain expenses that may have been incurred) "must inure to the exclusive benefit of the widow or widower (as the case may be) and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." § 2-404, Burns' 1933, § 51, Baldwin's 1934. Under this statute the damages are not apportioned among those entitled to participate therein, but are assessed in gross and distributed in the same manner as the personal estate of a decedent. *Baltimore, etc., R. Co.* v. *Ray* (1905), 36 Ind. App. 430, 73 N. E. 942. The damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained. *Indianapolis Traction, etc., Co.* v. *Lee, Exrx.* (1918), 67 Ind. App. 105, 118 N. E. 959. A minor child may recover damages for the loss of a parent until such child reaches the age of 21 years. *Cincinnati, etc., R. Co.* v. *Little, Admr.* (1921), 190 Ind. 662, 131 N. E. 762.

Dependency under the Compensation Law is defined in detail in § 38 of the act. § 40-1403, Burns' 1940 Replacement, § 16414, Baldwin's 1934. It will suffice for our present purpose to take note of some of the pertinent provisions of this section. Compensation is denied married children and children over 18 years of age who are neither physically nor mentally incapacitated from earning their own support. If the employee is survived

by one or more persons wholly dependent, those partially dependent are not entitled to receive compensation. If there is no one wholly dependent and more than one partially dependent, benefits are divided among the partial dependents, not under the laws of descent, but according to the relative extent of dependency as determined by the Industrial Board. A widow forfeits all right to compensation by remarriage.

It is at once apparent, therefore, that there are substantial differences between the wrongful death statute and the Compensation Act as regards those who may be benefited thereunder. As has already been observed, an administrator's action inures to the benefit of partial dependents as well as those wholly dependent; while compensation is paid exclusively to those wholly dependent, if there are such. If the sole survivor of a deceased employee is a daughter who marries subsequent to her father's death, she would have no right to compensation, though an action for damages on her behalf might be maintained against a third party by the personal representative of her father's estate under the terms of the wrongful death statute. If such daughter does not marry, but was past 18 years of age at the time of her father's death and not physically nor mentally incapacitated from earning her own support, the result would be the same. In the instant case, the widow under the Compensation Act shares death benefits equally with her five dependent children; but under the wrongful death statute she is entitled to one-third of the recovery, or twice the share allotted her under the compensation schedule. It might well occur, also, that those who elect to take compensation would be antagonistic to those on whose behalf the personal representative may prosecute an action under the wrongful death statute. This situation calls for a

careful scrutiny and interpretation of the provisions of the Compensation Act.

Actions for personal injuries did not survive and actions for wrongful death did not exist at common law. Our action for wrongful death, though of long standing, is therefore of statutory origin, and it may be controlled or abolished by the General Assembly. Among the disjunctive objectives of our Compensation Law, as set forth in the title of the act, is "to abolish certain personal injury litigation." If the personal injury litigation referred to in the title of the act may be said to embrace certain actions for wrongful death, it was within the province of the Legislature to abolish such actions in and by the enactment of the Compensation Law. The title of a legislative enactment is not required to be as specific as the terms of the act, and we are of the opinion that actions for wrongful death may reasonably be construed as embraced in the clause "certain personal injury litigation," since such actions for wrongful death necessarily constitute litigation resulting from personal injuries.

It is provided in § 6 of the Compensation Act that:

> "The rights and remedies herein granted to an employee subject to this act on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death." § 40-1206, Burns' 1940 Replacement, § 16382, Baldwin's 1934.

Under the Constitution of this state (§ 21, Article 4), an act may not be expressly amended without setting out the section at full length, and there may be no amendment by implication; but the enactment of a law specifically and fully covering the same subject-matter that is covered or embraced in a

general law, or any part of a general law, may create an exception to the general law. *Taelman* v. *Bd. of Fin. of School City of South Bend* (1937), 212 Ind. 26, 34, 6 N. E. (2d) 557, 561. It would therefore appear that by the enactment of the Compensation Law, the General Assembly merely created exceptions as to those who may not be regarded as dependents under said act, and left them without any remedy under the wrongful death statute.

Section 13 of our Compensation Act reads as follows:

"Whenever an injury or death, for which compensation is payable under this act, shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, at his or their option, may claim compensation from the employer or proceed at law against such other person to recover damages or may proceed against the employer for compensation and against such other person to recover damages at the same time, but he or they shall not collect from both; and, if compensation is awarded and accepted under this act, the employer, having paid compensation or having become liable therefor, may collect in his own name or in the name of the injured employee, or, in case of death, in the name of his dependents, from the other person in whom legal liability for damages exists, the compensation paid or payable to the injured employee or his dependents." § 40-1213, Burns' 1940 Replacement, § 16389, Baldwin's 1934.

The next question that presents itself is this: If, under § 13, the dependents of a deceased employee elect to sue a third party tort-feasor for damages, rather than to accept compensation from the employer, how and by whom is such action at law to be maintained? Section 13 is silent as to the procedural aspects of the situation beyond the general

provision that the dependents may "proceed at law against such other person to recover damages." Does this mean that they shall so proceed in the capacity of plaintiffs in their own names, or that the action shall be prosecuted on their behalf by the personal representative according to the method provided in the wrongful death statute? The dependents may be *non sui juris,* as in the case at bar where five of them are under nine years of age, and it is to be noted that there are no provisions in § 13 that the action on their behalf shall be prosecuted by a guardian, next friend, or otherwise. Turning to the wrongful death statute, we find, however, that it has been so interpreted that it is not necessary to name, even in the complaint, the persons on whose behalf the action is maintained. In *Smith, Admx.,* v. *Cleveland, etc., R. Co.* (1918), 67 Ind. App. 397, 411, 117 N. E. 534, 538, it was said:

> "It is unnecessary to name the persons entitled to such damages, but it will be sufficient to allege and prove the existence of such persons. (Cases cited) The failure to name in the complaint certain persons who are entitled to share in such damages does not prevent them from participating in the distribution of the same. (Case cited) The fact that certain persons are named in the complaint as next of kin who are not such within the meaning of the statute, does not deprive an administrator of his right to maintain the action for the benefit of those who are proper beneficiaries.
> . . .
> "The identity of such beneficiaries only becomes important in determining the amount of damages, but such proof can be made under allegations of their existence made in general terms. If next of kin are named or proved who are not beneficiaries within the meaning of the statute, no harm results to the defendant charged, unless the damages of such alleged beneficiaries are greater than the damages of the real beneficiaries. In that event their existence and amount of damages sustained is a

proper matter of defense. If beneficiaries are named in the complaint, or proof is made thereof under a complaint in general terms, the distribution is not limited to the persons so named or proved, but will be distributed to the persons actually entitled to receive the same under the statute, even to the exclusion of the persons so named or proved. Such questions are for the subsequent determination of the court having probate jurisdiction."

We do not find in § 13 any language creating in the dependents of a deceased employee a new right of action; rather, the context of the statute leads to the opposite conclusion. The "circumstances" under which an action for damages may be brought are not set forth in the section or in any other provision of the Compensation Act. This leads to the conclusion that § 13 must be considered in connection with other statutory provisions. The only other act applicable to the situation is the wrongful death statute, and it must follow that the action for damages contemplated by § 13 is to be pursued under the procedural machinery provided in the wrongful death statute. The right of beneficiaries to make an election to take compensation benefits after the commencement of an action by the personal representative, and the proper distribution of the damages recovered in an action at law, are not matters which we are now required to consider. But the contemplation of these problems does not suggest any other or different answer to the question now before us.

It is further contended on behalf of the appellant that the appellee is not the real party in interest, because it appears that the decedent's employer has already become liable for the payment of the compensation awarded the dependents, and that the employer's insurance carrier has instituted an

action against the appellant to recover the sums awarded. Section 13 of the Compensation Act provides that "if compensation is awarded and accepted under this act, the employer, having paid compensation or having become liable therefor, may collect in his own name or in the name of the injured employee, or, in case of death, in the name of his dependents, from the other person in whom legal liability for damages exists, the compensation paid or payable to the injured employee or his dependents." The appellant lays emphasis upon the use of the words "having paid compensation *or having become liable therefor*" and the words "compensation paid *or payable*" in the above section, and urges that the insurance carrier is authorized to maintain an action for recoupment as soon as the compensation award becomes final. (Our italics.) It is contended that the payment of compensation by the carrier is not a condition precedent to the maintenance of such action. It has been decided that the employer or its insurance carrier may maintain an action against the responsible third party before the compensation benefits awarded have been paid. *Employers', etc., Assurance Co.* v. *Indianapolis Trac. Co.* (1924), 195 Ind. 91, 144 N. E. 615, Id., Ind. Sup., 142 N. E. 856; *Wabash, etc., Light Co.* v. *Home Tel. Co.* (1923), 79 Ind. App. 395, 138 N. E. 692. However, it does not appear that the provision of the statute to the effect that compensation shall be both awarded *and accepted,* as conditions precedent to the maintenance of such an action, was considered in the above cases. In the last mentioned case the substance of the complaint is set out in the opinion, and it discloses that the beneficiaries had obtained an award and had accepted it. When the language of § 13, quoted above, is considered in the light of the preceding provisions, notably that the injured employee or his depend-

ents may maintain an action against the responsible third party either at the same time a claim for compensation is being prosecuted or after an award is entered, we must conclude that an acceptance of the award must occur before the employer or its insurer may sue for subrogation. While the action of the Travelers Insurance Company against the appellant is only incidentally before this court, we are of the opinion that the pendency of that action does not authorize us to hold that the decedent's dependents had accepted the award.

It is disclosed by the evidence that after compensation had been awarded the dependents, and during the pendency of the present action, Helen West, widow of the decedent, borrowed money from her husband's employer, Northern Indiana Telephone Company, for the maintenance of herself and her children. As evidence of this loan, Helen West, individually, as administratrix of the estate of Harry O. West, deceased, and as guardian for her said children, executed a promissory note for said loan and entered into a contemporaneous agreement with the employer. The said award and the pendency of this action were recited in the agreement, and it was expressly declared that the widow had made and was making no election of remedies; that if and when an election of remedies was made, the widow would repay the loan from the proceeds of said compensation awarded or from the judgment that might be obtained in this action; and that said award and judgment were assigned to the employer, subject to the right of the widow to elect which she would accept. In the case of *Artificial I. & C. S. Co.* v. *Ryan, Admr.* (1935), 99 Ind. App. 606, 193 N. E. 710, an injured employee elected to sue a negligent third person for damages, and was

met with the defense that he had accepted compensation. He was permitted to show that the money paid him was a gift or loan and was not in discharge of any compensation awarded him. In *Marion County Construction Co.* v. *Kimberlin* (1933), 96 Ind. App. 145, 184 N. E. 574, an injured employee entered into a compensation agreement with his employer, which agreement was submitted to and approved by the Industrial Board, thereby having the effect of an award. Compensation was paid under the approved agreement, after which the employee sued a third party for his injuries. On the trial the employee was permitted to show that he had an agreement with his employer to the effect that the compensation paid would be regarded as a loan and repaid, and that it had been repaid. The court held that whether the compensation award had been accepted was a question of fact for the jury. In the instant case, the loan cannot be regarded as an acceptance of compensation benefits on the part of the widow and other dependents, in view of the reservations contained in the accompanying agreement.

This case was tried on the theory that the death of the appellee's decedent was proximately caused by the negligence of the appellant. The court instructed the jury that:

> "The measure of the defendant's liability in this case is reasonable care. . . . .
>
> ". . . if the jury should find under the evidence that the defendant Power Company did use due and reasonable care in the light of known conditions, and the knowledge it had of the situation, all as shown by the evidence, then the defendant would not be liable under the law for the accident that has happened to plaintiff's decedent."

In *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 521, 121 N. E. 655, 657, 124 N. E. 737, 32 A. L. R. 1171, 1178, this court said:

"In submitting the determination to a jury of a question of negligence, which is a mixed question of law and fact, the court is required to define the duty which the law imposes. This duty is defined by the law as 'due care,' 'ordinary care,' or 'reasonable care,' which terms are regarded by the courts as having the same significance. It is also the duty of the court to state the rule fixing the standard of care which will measure up to the duty imposed by law. . . . The duty is the same under all relations, and the standard of care which will measure up to the duty in all cases is such care as a person of reasonable or ordinary prudence would exercise in view of all the conditions and circumstances as disclosed by the evidence in the particular case."

It will be noted that although the trial court correctly instructed the jury as to the defendant's duty, that is the duty to exercise reasonable care, said instruc- tion incorrectly defined the standard of care which will measure up to the duty imposed by law. The restriction of the duty to exercise reasonable care to conditions of which the defendant had knowledge was too narrow, but the instruction was favorable to the appellant. This error cannot therefore be regarded as having been harmful.

The appellee tendered, and the court gave, the following instruction:

"If you find from a preponderance of the evidence, that the plaintiff's decedent, Harry O. West, was performing his duties for his employer immediately before and at the time of his electrocution, in a reasonable manner, and that his death was proximately caused by any of the acts of negligence of the defendant, if any, as alleged in the complaint, then your verdict must be for the plaintiff."

The question is, whether the clause "performing his duties for his employer . . . in a reasonable manner" conveyed to the jury the same idea as if the instruction had used the words "acting with reasonable care." It is argued that to enjoin upon a person the obligation to perform his duties in a reasonable manner is tantamount to saying that he was required to act with reasonable care, and that "reasonable manner" therefore implies that the care required is that which an ordinarily prudent person would exercise under the same or similar circumstances.

"Manner" as used in this instruction means natural or normal behavior, habit, usage, or custom, while "care" implies serious attention of mind, heed, caution, concern, and regard. Performing his duties in a reasonable manner suggests a mode of action, measured by the customary or habitual method of accomplishment, qualified by reason. Acting with reasonable care indicates conduct tempered by heed, caution, and concern, and likewise qualified by reason. It will thus be seen that a man might perform his duties in a manner which, from the standpoint of himself, his employer, or others, might be deemed to be in accordance with natural and normal behavior, habit, usage, and custom, but which would not amount to reasonable care for his own safety. A man's natural and normal behavior may be negligent, and this may likewise be true of his habits, usages, and customs. In other words, a person may perform an act in what appears to be a reasonable manner, but which may not have been done with reasonable care from the viewpoint of the conduct of an ordinarily careful and prudent person under the same or similar circumstances.

The instruction is erroneous and it is mandatory in form, in that it tells the jury that if it finds from a preponderance of the evidence that the matters therein set forth are true, "then your verdict must be for the plaintiff." The error in giving such an instruction can only be cured by its withdrawal. *Indiana Service Corp.* v. *Schaefer* (1936), 101 Ind. App. 294, 299, 199 N. E. 158, 160, and cases there cited.

The judgment is reversed, with directions to sustain the appellant's motion for a new trial.

FANSLER, J., dissenting,

ROLL, J., concurs in dissent.

## DISSENTING OPINION

FANSLER, J.—We cannot concur in that part of the majority opinion which resulted in the reversal of the cause.

The action is for damages for negligently causing the death of Harry O. West. Mr. West was employed as a lineman by a telephone company. There was a storm which blew down certain wires. He was engaged in making repairs in various places, and, driving along the highway, he came to a spot where telephone wires were down. He took hold of the wires for the purpose of making repairs and was electrocuted. Current from the appellant's lines had reached the telephone wires at a point about a mile and a half from where he was working. This describes the duty that he was performing for his employer at the time of his electrocution.

The instruction which is the basis of the reversal contains a statement that if "Harry O. West was performing his duties for his employer . . . in a

reasonable manner," and his death was proximately caused by the negligence of the defendant, the verdict should be for the plaintiff. But this instruction did not stand alone. In other instructions the jury was told that if "the death of Harry O. West was proximately caused by the wrongful acts or omissions of the defendant, as alleged in the complaint, without contributory negligence upon the part of the plaintiff's decedent, then the plaintiff in this action would be entitled to recover . . . ," and "If you find that Harry West was guilty of any negligence no matter how slight it may have been which proximately caused or contributed to cause his death, the plaintiff is not entitled to recover . . . ," and "You are instructed that if at the time of the accident in question the plaintiff's decedent in company with a fellow employe of the Telephone Company, in the performance of their duties as such employees, discovered that the Telephone lines in front of the Ulmer home were down, and if at said time the plaintiff's decedent was familiar with the location of the power lines of the defendant Company, then he would be required in view of his knowledge of the conditions then existing, and the storm which had just happened, to use due care and caution in the light of such knowledge as he then had. And if you find from the evidence that he did not use reasonable care and caution in the light of the knowledge he had of the conditions existing, and such lack of reasonable care on his part contributed to the happening of the accident, then such negligence on his part would be a bar to the plaintiff's recovery in this case. You are further instructed that plaintiff's decedent would not be bound to know at all hazard that said Electric Power Line wires had come in contact with the Telephone Company wires, nor was he bound to anticipate at his own hazard that the Telephone

wires were charged, but he was required under the law to use such reasonable care and caution as his experience as a telephone lineman, and his knowledge of the situation with reference to the Power lines and the telephone lines, and the condition of the weather would enable him to judge of the proper and safe way of performing his work." And in another instruction the jury was told that if "Harry O. West, without any fault of his own," was electrocuted and killed, and that the negligence of the defendant was the proximate cause, the verdict should be for the plaintiff. The court also instructed the jury that: "You are instructed that all of the law is not embodied in any one of the instructions given, but that you should take the instructions as a whole and from them determine the law as it applies to the various issues in said cause."

From these instructions, and the many other instructions in the case, it was made clear to the jury, beyond possibility of misapprehension, that if the negligence of the defendant proximately caused the death of Harry O. West, their verdict should be for the plaintiff, unless negligence on the part of Harry O. West also proximately contributed to his death. This is true unless the words, "in a reasonable manner," in the instruction which is the basis of the reversal, were construed by the jury to mean something less than, and different from, "reasonable care" or "in a reasonably careful manner." In construing written instruments and in construing instructions, courts are not so much concerned with the ordinary meaning of words as with the meaning which they convey in the setting in which they are used. Mr. Justice Holmes expressed a truth of which we are all conscious when he said: "A word generally has several meanings even in the dictionary. You have to consider the sentence in which it stands

to decide which of those meanings it bears in the particular case, and very likely will see that it there has a shade of significance more refined than any given in the word book . . . So when you let whatever galvanic current may come from the rest of the instrument run through the particular sentence, you still are doing the same thing." 12 Harvard Law Review 417, 1899.

In order to determine that the instruction in question is bad it must be concluded that it stated the law incorrectly to the jury, but in order to conclude that it stated the law incorrectly, it must be concluded that, from the words, "in a reasonable manner," read in a context made up of all the instructions given, the jury received the impression that there could be a recovery, notwithstanding a lack of reasonable care on the part of Mr. West. It is not as though the instruction expressly told them that he was not required to use reasonable care. The question is, did the instruction, together with all of the other instructions, tell them that they must find that he was acting with reasonable care? Lawyers and courts generally adhere to well-known formulae in defining duties and relationships; and, while a departure from approved and familiar language may be unfortunate, it is not necessarily fatal to correct statement or definition. Jurors are laymen, and if the language used is sufficient to correctly advise the lay mind as to the duties involved, it is sufficient. If one who saw a collision between a motorcar and a truck should say that the car was being driven in a reasonable manner, there would be no doubt that he meant to convey the idea that the manner of driving was reasonable with respect to those things which were liable to cause a collision. When it is considered that the instruction here in question was given at the end of a trial

in which the evidence was principally directed to the question of whether or not there was negligence upon the part of the defendant, or upon the part of the man who was killed, and in which discussion and argument of counsel were undoubtedly directed to the same questions, and where it was given in conjunction with other instructions to the effect that there could be no recovery if the negligence of the person who was killed proximately contributed to his death, or if the decedent was guilty of any negligence, no matter how slight, which proximately contributed to his death, and that the decedent was bound to use due care and caution in the light of his knowledge as a lineman, and in the light of any knowledge he may have acquired concerning the power lines being down as a result of the storm, we cannot bring ourselves to doubt that they understood the words, "in a reasonable manner," to mean in a reasonable manner respecting the things which might endanger his life or limb, and if the words conveyed that impression they served the purpose as well as words to which we are more accustomed, and the defendant was not prejudiced and the instruction was not erroneous. If all of the expressions above quoted, including the one about performing his duties for his employer in a reasonable manner, had been written into the same instruction, it would hardly be contended that it stated the law incorrectly. But all of the language of the court upon the subject of contributory negligence must be read together, whether it is confined to one instruction or contained in several, since the instructions must be considered as a whole.

It is urged that the instruction is peremptory, and therefore should contain all of the elements necessary to a recovery, but if the words, "in a reasonable manner," meant to the jury a reasonably careful manner

as elaborated and described in the other instructions, it did contain all of the elements necessary to a recovery.

Having reached this conclusion, we believe the judgment should be affirmed.

ROLL, J., concurs in dissent.

NOTE.—Reported in 32 N. E. (2d) 713.