Barry DURHAM and Bill Wade, on behalf of the ESTATE OF Kathy WADE, and Barry Durham as natural guardian for Amy Durham and Jason Durham, and Bill Wade, individually, Appellants/Cross Appellees (Plaintiffs Below),

v.

U–HAUL INTERNATIONAL et al., Appellees/Cross Appellants (Defendants Below).

No. 49S02–0005–CV–294.

Supreme Court of Indiana.

April 10, 2001.

Scott A. Benkie, Indianapolis, IN, Attorney for Appellant.

Jerry Garau, Indianapolis, IN, for Amicus Curiae Indiana Trial Lawyers Association.

Michael C. Peek, Rodney V. Taylor, Indianapolis, IN, Geoffrey L. Blazi, Stephen R. Pennell, Lafayette, IN, Attorneys for Appellee.

James D. Johnson, Angela L. Freel, Evansville, IN, for Amicus Curiae Defense Trial Counsel of Indiana.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

We adhere to precedent that punitive damages are not recoverable in an action brought under the wrongful death statute. We also hold that the wrongful death statute provides the only remedy against a person causing the death of a spouse and there is no independent claim against this person for loss of consortium. Finally, we hold that loss of consortium damages against a person causing the death of a spouse are not cut off by the death of that spouse. Rather, they are to be measured by the life expectancy of the deceased spouse or the surviving spouse, whichever is shorter.

### Factual and Procedural Background

On June 8, 1995, Kathy Wade and Francis J. Radwan, Jr. were traveling eastbound on I–74 in a construction zone divided by a barrier. A U–Haul truck and trailer behind them was unable to stop in response to the slowed traffic, swerved, and struck them in the right rear side. Their car was sent careening across the barrier into the path of an oncoming truck. Radwan was killed instantly and Kathy died within minutes. A State Police report of the accident concluded the brake rotors on the U–Haul were rusted and the truck had no brake fluid, with the result that the U–Haul was unable to brake "during or prior to the impact." No other defects were identified.

Barry Durham is the father of Kathy's two children. Bill Wade was Kathy's husband at the time of her death. Durham and Wade were appointed co-executors of Kathy's estate, and joined as plaintiffs in a wrongful death suit against U–Haul, the State of Indiana, and various highway construction firms. Durham sued on behalf of Kathy's estate and as guardian of the children. Wade sued on behalf of Kathy's estate, and also asserted his own claim for loss of consortium. Both plaintiffs sought punitive damages.

Several defendants moved for partial summary judgment on the issues of punitive damages and Wade's loss of consortium claim. The motions contended that no punitive damages are recoverable under the wrongful death statute and that Wade is limited to a wrongful death claim and may not pursue a separate loss of consortium claim for Kathy's death. The trial court held that (1) Wade's loss of consor-

tium claim could proceed, including a claim for punitive damages; and (2) punitive damages were not recoverable under the wrongful death statute. The Court of Appeals affirmed the holding that a consortium claim could be asserted but reversed the grant of summary judgment on the issue of punitive damages. The court held that principles of statutory construction, case law, and policy support recovery of punitive damages in a wrongful death claim. *Durham v. U–Haul Int'l*, 722 N.E.2d 355 (Ind.Ct.App.2000).

Three issues are presented: (1) whether Indiana's wrongful death statute allows recovery of punitive damages; (2) if not, whether this violates the federal or state constitution; and (3) may a surviving spouse bring an independent loss of consortium claim for punitive damages or is the surviving spouse restricted to loss of consortium damages under the wrongful death statute.

### Standard of Review

■ On appeal, the standard of review of a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind.1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Shell Oil*, 705 N.E.2d at 983–84. The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993).

### I. The Wrongful Death Statute and Punitive Damages

The plaintiffs advance a number of policy considerations supporting their claim that punitive damages should be allowed under Indiana's wrongful death statute. The defendants respond that the issue is one of statutory interpretation and, because it is well settled that punitive damages are not recoverable under the wrongful death statute, any change in the law is a decision for the legislature, not this Court. The Court of Appeals undertook a statutory analysis, examined precedent holding that punitive damages are barred, and concluded that despite concerns as to both, public policy advised in favor of allowing punitive damages in the wrongful death action.

■ At common law, a cause of action was extinguished by the death of the plaintiff. Because the victim was viewed as the only person wronged by a negligent killing, even a defendant whose negligence caused the plaintiff's death was insulated from liability. This inequity gave rise to wrongful death statutes, first in England in 1846, and soon thereafter in every United States jurisdiction. *Durham*, 722 N.E.2d at 357–58; *accord In re Estate of Pickens v. Pickens*, 255 Ind. 119, 125–26, 263 N.E.2d 151, 155 (1970). The wrongful death action is entirely a creature of statute. *Northern Indiana Power Co. v. West*, 218 Ind. 321, 329, 32 N.E.2d 713, 716–17 (1941), *overruled on other grounds by State v. Larue's, Inc.*, 239 Ind. 56, 154 N.E.2d 708 (1958). Indiana's statute was first adopted in 1852, 2 G. & H. 330, sections 782–84 (1870), then again in 1881, Laws of the State of Indiana, ch. 38, sections 6–29 (1881). It has since been amended on nine different occasions, most recently in 1998. Ind.Code § 34–23–1–1 (1998). In all of its different versions, the general wrongful death statute has never specifically addressed punitive damages. In contrast, the 1999 statute dealing with the wrongful death of unmarried adults

with no dependents explicitly bars punitive damages. *Id.* § 34–23–1–2 (Supp.2000). A third statutory treatment of this issue is found in the 1987 child wrongful death statute, which provides a list of recoverable damages that does not include punitive damages. *Id.* § 34–23–2–1 (1998).

Plaintiffs contend that, although the wrongful death action is a creature of statute, the disallowance of punitive damages is a "judicially engrafted" rule that can be judicially removed. They cite to Chief Justice Shepard's concurrence in *Miller v. Mayberry*, 506 N.E.2d 7, 12 (Ind.1987) (Shepard, C.J., concurring in result), *superseded by* Ind.Code § 34–1–1–8 (1987), in which he disagreed with the majority's view that separation of powers concerns prohibit the judiciary from changing its interpretation of a statute. Plaintiffs also insist that *Lindley v. Sink*, 218 Ind. 1, 30 N.E.2d 456 (1940), has been mistakenly cited for the proposition that punitive damages are prohibited under the wrongful death statute. They point out that *Lindley* turned on the unrelated issue of whether the contributory negligence of one beneficiary precludes recovery by all of the beneficiaries. 218 Ind. at 11–12, 30 N.E.2d at 460. Plaintiffs contend that reliance of subsequent cases on *Lindley* is also misplaced.

▪▪▪ The goal of statutory construction is to determine and give effect to the intent of the legislature. *Sales v. State*, 723 N.E.2d 416, 419–20 (Ind.2000); *accord Collier v. Collier*, 702 N.E.2d 351, 354 (Ind. 1998); *Sullivan v. Day*, 681 N.E.2d 713, 717 (Ind.1997). We agree that there is no constitutional bar to revisiting judicial authority interpreting a statute. But if a line of decisions of this Court has given a statute the same construction and the legislature has not sought to change the relevant parts of the legislation, the usual reasons supporting adherence to precedent are re-inforced by the strong probability that the courts have correctly interpreted the will of the legislature. *Heffner v. White*, 221 Ind. 315, 318–19, 47 N.E.2d 964, 965 (1943) ("[S]uch construction should not then be disregarded or lightly treated."); *accord Loeb v. Mathis*, 37 Ind. 306, 312 (1871). Finally, because the wrongful death statute is in derogation of the common law, it is to be construed strictly against the expansion of liability. *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind. Ct.App.1994).

Plaintiffs argue, and the Court of Appeals agreed, that it is significant that the legislature, in all its amendments to the general wrongful death statute, has never explicitly excluded punitive damages, even though it has expressly provided that punitive damages are not recoverable under the unmarried adult with no dependents statute and provided a list of recoverable elements of damages under the child wrongful death statute. I.C. §§ 34–23–1–2, –2–1. Plaintiffs also note the language of the statute itself, which leaves open-ended what damages are recoverable under the statute: "[D]amages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission." *Id.* § 34–23–1–1. This language, according to plaintiffs, leaves this Court free to allow punitive damages.

Although the general wrongful death statute does not mention punitive damages, the legislature has made some changes to the wrongful death legislation that are noteworthy. As the Court of Appeals pointed out, in 1987, the legislature changed the child wrongful death statute to explicitly allow recovery for "loss of services" and "loss of companion-

ship and affection." At the same time, the legislature added a list of recoverable elements that does not include punitive damages.[1] *Durham,* 722 N.E.2d at 358, 363. This was done only a few months after this Court's decision in *Mayberry,* which held that a damage award for loss of love and affection in a child wrongful death action violated the "pecuniary damage rule," 506 N.E.2d at 11. This change was also close on the heels of the Court of Appeals' holding that neither punitive damages nor recovery for love and affection for the death of a child was a compensable element of recovery under the statute. *Andis v. Hawkins,* 489 N.E.2d 78 (Ind.Ct.App. 1986), *trans. denied.* Although, as the dissent points out, this was not a decision of the Supreme Court, that decision preceded the 1988 constitutional amendment that substantially freed this Court to address civil law issues. By the end of World War II, and continuing through 1988, this Court had been virtually precluded from entertaining civil litigation. At that time, the Court of Appeals sat in fixed panels of three judges for each of three geographical districts. As a practical matter, Court of Appeals decisions were regarded as likely to be the last word on the subject, at least for the district.[2] We do not think it likely that the 1987 legislature was unaware of

1. The child wrongful death statute provides: Sec. 1.

 . . .

 (e) In an action to recover for the death of a child, the plaintiff may recover damages:
 (1) for the loss of the child's services;
 (2) for the loss of the child's love and companionship; and
 (3) to pay the expenses of:
 (A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;
 (B) the child's funeral and burial;
 (C) the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child;
 (D) uninsured debts of the child, including debts for which a parent is obligated on behalf of the child; and
 (E) the administration of the child's estate, including reasonable attorney's fees.
 I.C. § 34-23-2-1.

2. The 1851 Constitution created the Supreme Court, circuit courts, and gave the legislature the power to create other "inferior courts." Ind. Const. art. VII, § 1 (1851). The legislature created the Court of Appeals in 1891, 1891 Ind. Acts ch. 37, § 1, but this Court continued to exercise exclusive jurisdiction over non-misdemeanor criminal cases until 1970. In that year, the constitution was amended to require all criminal appeals of convictions carrying a penalty of more than ten-years imprisonment to be appealed directly to this Court. All others could be reviewed by the Court of Appeals. Ind. Const. art. VII, § 4, § 6 (1970). This amendment does not appear to have eased the criminal caseload of the Court greatly, if at all. In 1968, the Court's docket was nearly two-thirds criminal, compared to nearly three-quarters criminal in 1972. The Court's civil docket from 1968 and 1972 consisted of an array of civil direct appeals, including appeals from interlocutory orders, grants or denials of preliminary injunctive relief, and condemnation proceedings, just to name a few. In 1968, only eighteen of the Court's 239 opinions were civil transfer cases. Similarly, in 1972, only thirteen of the 218 written opinions arrived at this Court by way of the Court of Appeals. The situation was further exacerbated in 1976, when the legislature amended the criminal code and increased the number of crimes for which the penalty exceeded ten years imprisonment. In 1988, a constitutional amendment permitted all criminal appeals involving a penalty of less than fifty years to go to the Court of Appeals. Finally, in 2000, a constitutional amendment restricted the mandatory direct appeal jurisdiction of this Court to death penalty cases. The rule implementing the 2000 amendment also provides for direct review by this Court of all life without parole cases. For a review of this Court's increasing criminal docket leading up to the 1988 amendment, see Randall T. Shepard, *Changing the Constitutional Jurisdiction of the Indiana Supreme Court: Letting a Court of Last Resort Act Like One,* 63 Ind. L.J. 669 (1987–88).

the Court of Appeals ruling, or regarded it as insignificant.

The Court of Appeals opinion in this case cites the 1987 amendment to the wrongful death statute as support for the proposition that the legislature has rejected the "pecuniary damage rule," that is, the notion that only strictly pecuniary losses are recoverable under the wrongful death statute. We think the lesson of the 1987 legislation is rather that the legislature can act swiftly if our interpretation of its statute is incorrect. In contrast to its elimination of the prohibition against recovery for a child's love and companionship, the legislature has never responded to the courts' pronouncements on the punitive damages issue. This legislative silence is in the face of a number of decisions that have construed the general wrongful death statute to preclude punitive damages. *See Kuba v. Ristow Trucking Co.*, 508 N.E.2d 1, 2–3 (Ind.1987) ("The confines and limitations inherent in a statutorily based wrongful death action do not permit a claim for treble damages."); *Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045, 1056–57 (Ind.Ct.App.1990) (punitive damages are not recoverable in wrongful death action) (citing *Andis,* 489 N.E.2d at 82–83); *accord Huff v. White Motor Corp.*, 609 F.2d 286, 297 (7th Cir. 1979) (punitive damages are not allowed where purpose of statute remains compensatory).

When it disagrees with judicial rulings, the legislature can act. It amended the statute to allow the loss of love and companionship of a child to be a compensable element of damages under the child wrongful death statute. This is consistent with Indiana's longstanding pecuniary loss rule. In *Herriman v. Conrail, Inc.*, 887 F.Supp. 1148, 1154–55 (N.D.Ind.1995), the

court interpreted Indiana case law since the 1987 amendment and concluded that Indiana continues to adhere to the pecuniary loss rule, despite inclusion of loss of services and loss of love and companionship. Loss of love and companionship are often included among pecuniary damages, even if they are not pecuniary in the strict sense of the word. 22A Am.Jur.2d *Death* § 225 (1988) (where damages are limited to pecuniary losses, recovery for loss of comfort and society are not prevented). As discussed later, in Indiana the pecuniary damage rule has also not precluded recovery of "intangible" loss of consortium damages under the wrongful death statute.

Failure to address punitive damages cannot be attributed to legislative indifference to the wrongful death statute. The legislature has amended the wrongful death statute approximately once a decade since the 1930s.[3] But despite these many other changes to the Act, the legislature has never amended it to address explicitly the availability of punitive damages. We can only conclude that the legislature is content with the consistent line of cases finding punitive damages unavailable. Finally, where the legislature has explicitly spoken to this issue in other contexts, its attitude is hostile to punitive damages, either prohibiting them or setting forth an exhaustive list of recoverable items that does not include punitive damages.

The net effect of the Court of Appeals' decision is to disregard a long line of case law finding the purpose of the wrongful death statute to be compensatory, and concluding that punitive damages are therefore not recoverable. This doctrine is first found in *Louisville, New Albany, & Chicago Railway Co. v. Goodykoontz*, 119 Ind. 111, 113, 21 N.E. 472, 472–73 (1889), where

---

**3.** The general wrongful death statute, enacted in 1852 and again in 1881, has been amended in 1899, 1933, 1937, 1949, 1951, 1957, 1965, 1982, and 1998.

this Court stated that the wrongful death action is intended to "afford compensation for those who have sustained pecuniary loss by the death, and not for the benefit of the decedent's estate." *Id.; accord Pickens,* 255 Ind. at 126, 263 N.E.2d at 155 ("The purpose of the statute then is to create a cause of action to provide a means by which those who have sustained a loss by reason of the death may be compensated."). At the time these cases were decided, punitive damages were rarely sought. These early statements may therefore not reflect considered rejection of the availability of noncompensatory damages under the wrongful death act. However, the reaffirmation of that notion in more recent cases, coupled with the legislative history already described, is persuasive that the issue has been considered in modern times and resolved against the plaintiffs' position.

The Court of Appeals examined Indiana's view of punitive damages and concluded that "Indiana is increasingly receptive to imposing exemplary damages" and that "Indiana no longer uses exemplary damages solely for punishment or retribution." *Durham,* 722 N.E.2d at 362. Rather, Indiana has come to realize that exemplary damages also serve a deterrent effect. In support of the court's first proposition, it noted that the legislature has expanded the treble damages statute to cover an increasing number of contexts. In support of the latter proposition, the court cited a recent Court of Appeals opinion that was adopted on transfer. *Bell v. Clark,* 653 N.E.2d 483, 490–91 (Ind.Ct. App.1995), *adopted on transfer by* 670 N.E.2d 1290 (Ind.1996).

We disagree with the Court of Appeals that there is an identifiable trend in Indiana law in favor of expanding access to punitive damages. The legislature has the power to enlarge the scope of punitive damages, including under the wrongful death statute, but has seen fit to reduce the incentive to seek punitive damages. *See* I.C. §§ 34–23–1–1 to 1–2 & 2–1. And in several instances the legislature has explicitly curtailed their availability altogether. *Id.* § 25–6.1–8–4 (1998) (recovery from auctioneer fund may not include punitive damages award); § 34–13–3–4 (Tort Claims Act bars punitive damages); § 34–23–1–2 (barring punitive damages under unmarried adult with no dependent wrongful death statute). Nor is the deterrent potential of punitive damages a novel consideration. To the contrary, this Court's rationale for the imposition of punitive damages has long included deterrence as a valid consideration. Indeed, over one hundred years ago, we observed that: "Exemplary or punitive damages, the terms exemplary and punitive being synonymous, are damages allowed as a punishment, or by way of example, to deter others from the like offences, for torts committed with accompanying fraud, malice, or oppression." *State ex rel. Scobey v. Stevens,* 103 Ind. 55, 59, 2 N.E. 214, 216 (1885); *accord Husted v. McCloud,* 450 N.E.2d 491, 495 (Ind.1983); *Art Hill Ford, Inc. v. Callender,* 423 N.E.2d 601, 602 (Ind.1981); *Indiana & Michigan Elec. Co. v. Stevenson,* 173 Ind.App. 329, 341, 363 N.E.2d 1254, 1262 (1977).

The Court of Appeals took the view that its opinion in *Andis* should be reexamined in light of a developing trend in other jurisdictions in favor of allowing punitive damages in wrongful death actions. In *Andis,* the Court of Appeals referred to the general rule that, in most states, punitive damages are prohibited under the applicable wrongful death statute. 489 N.E.2d at 79–80. The plaintiffs note that twenty-seven states now allow punitive damages in wrongful death cases. However, in eleven of these states the wrongful death statute expressly permits punitive

damages. Thus, the majority of states in which the statute is silent as to punitive damages (twenty-two out of thirty-eight) continue to bar punitive damages. 1 Stuart M. Speiser et al., *Recovery for Wrongful Death and Injury* § 3A:4 (3d ed.1992). Finally, and most persuasively, the plaintiffs argue that it runs contrary to public policy to allow punitive damages in the ordinary personal injury case but not in the wrongful death action. As plaintiffs put it, we cannot have a legal regime in which it is "cheaper to kill than to maim." It is obviously correct that legal rules should not encourage or fail to deter fatalities. But it is difficult if not impossible for a defendant to calculate what the measure of damages will be in any given personal injury or wrongful death case. Whether or not punitive damages are recoverable, injuring or causing another's death is no inexpensive matter and will result in very different damage awards depending on variables over which a defendant has little or no control.

Finally, the plaintiffs argue that the statutory language leaves open the possibility of punitive damages. As noted earlier, in 1965, the legislature amended the wrongful death statute to include a list of recoverable damages, explicitly providing that its list was nonexhaustive. The significance of this provision has been addressed and resolved in prior cases. *Kuba*, 508 N.E.2d at 2 (construing "but not limited to" language as limited to damages "evolv[ing] from a deprivation to a survivor as a result of the death"); *accord Huff*, 609 F.2d at 297. *Kuba* thus took the view that although the legislature left open the statute to allow for other damages, these damages must be compensatory. *Huff* pointed out the unlikelihood that in 1965 the legislature intended to alter the statute to provide for the possibility of punitive damages. *Id.*

We have no quarrel with the result reached by the Court of Appeals as a matter of policy. If we were writing on a clean slate we would find the Court of Appeals' analysis persuasive. However, where the legislature has spoken, we believe policy setting on an issue such as this is for the elected branch of government. If the legislature disagrees with this long-standing interpretation of the statute, it can correct it. In the meantime, despite any resulting unfairness, punitive damages are not recoverable under the wrongful death statute.

## II. Equal Protection

Plaintiffs assert that allowing punitive damages to personal injury plaintiffs but not to wrongful death plaintiffs violates the "equal protection clauses" of the United States and Indiana Constitutions. They do not identify the source of "equal protection" under the Indiana Constitution, nor do they identify any case law in support of this proposition. Specifically, they advance no argument based on *Collins v. Day*, 644 N.E.2d 72 (Ind.1994), and its progeny addressing Article I, section 23 of the Indiana Constitution. Rather, they merely contend that prohibiting their recovery of punitive damages "is not rationally related to a legitimate state objective." Because they do not present independent analysis of the Indiana Constitution, their equal protection argument is governed by federal law. Because no "suspect class" is involved here, the Fourteenth Amendment requires only that the legislative classification be rationally related to a legitimate government interest. *See Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

This Court has long considered the wrongful death statute to exist for the primary purpose of compensating those harmed by the wrongful death of another. *E.g., In re Estate of Pickens v. Pickens,*

255 Ind. 119, 125–26, 263 N.E.2d 151, 156 (1970). Barring punitive damages in the case of a wrongful death is consistent with the goal of the wrongful death statute, which is to compensate survivors of the wrongful death victim rather than to punish defendants. Punitive damages are simply one element of damages, little of which ends up in the hands of the plaintiff. *See* Ind.Code §§ 34–51–3–1 to –6 (1998) (requiring, among other things, that seventy-five percent of punitive damages awards be placed in the victims compensation fund). Moreover, there is no entitlement to punitive damages. *Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349, 362–63 (Ind.1982) ("It has never been implied that a plaintiff has any entitlement to [punitive] damages. Rather, he is merely the fortunate recipient of the 'windfall.' "). The wrongful death statute also reflects the reality that the injuries to victims and beneficiaries are qualitatively different. In short, we agree with the Seventh Circuit that the statute does not fail federal equal protection analysis. *Huff,* 609 F.2d at 298 ("Plaintiff has not persuaded us that the adoption of [the wrongful death statute] without a provision authorizing awards of punitive damages was irrational.").

### III. Loss of Consortium

Wade urges that he should be able to pursue a loss of consortium claim independently of the wrongful death action, even though his wife's death occurred within a few minutes of the accident. Wade relies on *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1057 (Ind.Ct.App.1990), in which the Court of Appeals concluded that a widow was entitled to recover punitive damages on her separate loss of consortium claim. Wade urges that a loss of consortium claim should be allowed irrespective of whether a spouse is injured or dies instantaneously as a result of the de-

fendant's negligence because to conclude otherwise creates an anomaly in the law. Wade also contends that the independent common law loss of consortium claim permits elements of damages different from those that may be awarded under the wrongful death statute. The loss of consortium is seen as a route to avoid the bar on punitive damages.

As already noted, at common law any cause of action a plaintiff had against a defendant was extinguished by the plaintiff's death, even if the death was caused by the defendant. In response, the wrongful death statute was passed in 1852 and has since provided the sole remedy for the estate and beneficiaries of a deceased plaintiff whose death was caused by the act or omission of the defendant.

■■■ The loss of consortium claim has been described as a claim derivative of the injured spouse's personal injury claim. *Wine–Settergren v. Lamey,* 716 N.E.2d 381, 390–91 (Ind.1999); *Mayhue v. Sparkman,* 653 N.E.2d 1384, 1386–87 (Ind.1995). By this we mean that if the spouse's cause of action for personal injury fails, the loss of consortium claim falls with it. *Wine–Settergren,* 716 N.E.2d at 390–91 (spouse may not bring loss of consortium claim where injured spouse's claim is barred by Worker's Compensation Statute). The reason for this requirement is rarely stated, but we think it sound. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 125, at 938–39 (5th ed. 1984) ("Courts have commonly said that the consortium action is derivative and must fall with the main claim, but as they could as well have said that it was independent, this sounds more like a conclusion than a reason. . . ."). If a spouse's case survived in a claim that would be barred if brought by the injured person, a number of legislative policy calls would be circum-

vented. A claim covered by worker's compensation would still be brought as a personal injury claim by the worker's spouse despite the policy of the statute to foreclose litigation over fault in accidents in the workplace. *Cf. Wine–Settergren,* 716 N.E.2d at 390–91. Similarly, the wrongful death statute's limitation on punitive damages would be circumvented. Both of these issues are fairly debatable, but because we believe the legislature has resolved the policy calls on these points we adhere to precedents.

Most states continue to adhere to the rule that common law recovery for loss of consortium damages is limited to the period between the spouse's injury and the spouse's death. *T & M Investments, Inc. v. Jackson,* 206 Ga.App. 218, 425 S.E.2d 300, 304 (1992); *Clark v. Hauck Mfg. Co.,* 910 S.W.2d 247, 252 (Ky.1995); *Archie v. Hampton,* 112 N.H. 13, 287 A.2d 622, 625 (1972); *Liff v. Schildkrout,* 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288, 1291–92 (1980); *Rinke v. Johns–Manville Corp.,* 47 Wash.App. 222, 734 P.2d 533, 535 n. 1 (1987); *Restatement (Second) of Torts* § 693 cmt. f (1977). This is not to say, however, that because a surviving spouse may not maintain an independent claim for loss of post-death consortium, the spouse cannot recover for loss of consortium damages. In many states, wrongful death statutes explicitly provide for loss of consortium damages. *E.g.,* Iowa Code § 613.15 (1999); Mo.Rev.Stat. § 537.090 (2000).

■ We agree that loss of consortium is a proper element of damages in a wrongful death action for the death of a spouse. To the extent that our prior case law, most notably *Burk v. Anderson,* 232 Ind. 77, 81, 109 N.E.2d 407, 408–09 (1952), holds that no loss of consortium damages are recoverable in a wrongful death action for periods after the spouse's death, it is overruled. Although Indiana has no ex-

plicit provision in the general wrongful death statute allowing loss of consortium damages, that item of damages has long been recoverable under the wrongful death statute. *Dearborn Fabricating & Eng'g Corp. v. Wickham,* 551 N.E.2d 1135, 1138 (Ind.1990) (noting that under general wrongful death statute "recovery is allowed for loss of care, love, and affection sustained by a decedent's spouse"); *Andis v. Hawkins,* 489 N.E.2d 78, 82 (Ind.Ct. App.1986), *trans. denied* (pecuniary loss includes "the reasonable expectation of pecuniary benefit from the continued life of the deceased, to be inferred from proof of assistance by way of money, services, or other material benefits rendered by the deceased prior to his death") (citing *Lustick v. Hall,* 403 N.E.2d 1128, 1131 (Ind.Ct. App.1980), *trans. denied* ); *Dunkelbarger Const. Co. v. Watts,* 488 N.E.2d 355, 359 (Ind.Ct.App.1986) (loss of care, love, and affection are compensable as pecuniary damages); *Richmond Gas Corp. v. Reeves,* 158 Ind.App. 338, 369–70, 302 N.E.2d 795, 815–16 (1973) (concluding in wrongful death case that jury may consider intangible losses such as love and affection).

■ As these cases suggest, consortium has been defined to include both tangible and intangible elements. In addition to the provision of material services, consortium includes both conjugal and other "elements of companionship." Various terms have been employed to describe the "elements of companionship," including "service," "aid," "fellowship," "companionship," "company," "cooperation," and "comfort." 41 Am.Jur.2d *Husband and Wife* § 7 (1995). Indiana courts have likewise defined consortium to include both material services, i.e., calculable and monetary damages, as well as love, care, and affection. *Troue v. Marker,* 253 Ind. 284, 252 N.E.2d 800, 804–05 (1969) (spouse is entitled to recover intangible losses and

monetary losses, including for transportation formerly provided by deceased spouse); *Planned Parenthood, Inc. v. Vines,* 543 N.E.2d 654, 657 (Ind.Ct.App. 1989) (consortium includes services, society, and sexual relations—the "rights and benefits" one expects "upon entry into the marriage relationship"); *Gregg v. Gregg,* 37 Ind.App. 210, 216–17, 75 N.E. 674, 675–76 (1905) (holding, in alienation of affections case, that pecuniary loss is not a prerequisite for recovery on a consortium claim); *Adams v. Main,* 3 Ind.App. 232, 234–35, 29 N.E. 792, 793–94 (1892) (same).

 Wade has urged that traditional loss of consortium damages vary from loss of consortium damages under the wrongful death statute, but points to no significant distinction between the two. On the contrary, these cases illustrate that both material services as well as loss of love, care, and affection are recoverable elements under the wrongful death statute. Wade cites to cases in support of the proposition that loss of consortium damages continue independently of a wrongful death action upon the death of a spouse. However, in all of these cases, the spouse was incapacitated or ill for a significant period of time before death. *Cahoon v. Cummings,* 734 N.E.2d 535, 538 (Ind. 2000); *Mayhue,* 653 N.E.2d at 1385–86; *R.J. Reynolds,* 557 N.E.2d at 1045. Thus, this Court has never directly considered the issue presented by this case. Wade also cites *Abernathy v. Superior Hardwoods, Inc.,* 704 F.2d 963, 972 (7th Cir. 1983), in which Judge Posner stated in a parenthetical: "You cannot claim loss of consortium for a period after your spouse's death unless the defendant's culpable acts accelerated his death, and there is no suggestion that the accident reduced [plaintiff's] life expectancy." This observation is consistent with our understanding of loss of consortium damages in Indiana. Loss of consortium damages do not continue beyond the death of the spouse unless the defendant is responsible for the death. The derivative loss of consortium claim is extinguished with the death of the spouse's personal injury claim against the person causing the death. However, loss of consortium damages may be recovered under the wrongful death statute, if the defendant's negligence caused or accelerated the death of the other spouse.

 Wade seeks to bring a separate loss of consortium claim in order to recover punitive damages. *See, e.g., R.J. Reynolds,* 557 N.E.2d at 1057. However, as we reaffirm today, punitive damages are not recoverable in a wrongful death action. Here, because the deceased spouse's claim is governed by the wrongful death statute and is barred as a common law claim, the wrongful death statute also governs the surviving spouse's claim. Thus, even though Wade may recover loss of consortium damages for his life-expectancy or Kathy's, whichever is shorter, he is restricted to compensation under the wrongful death act and is not independently entitled to punitive damages based upon a loss of consortium claim.

### Conclusion

We reverse in part, affirm in part, and remand for proceedings consistent with this opinion.

SHEPARD, C.J., and SULLIVAN, J., concur.

RUCKER, J., dissents with separate opinion in which DICKSON, J., concurs.

RUCKER, Justice, dissenting.

In a well-reasoned and persuasive opinion the Court of Appeals concluded that the general wrongful death statute could reasonably be interpreted as allowing punitive damages. I agree and therefore

respectfully dissent from the majority's opinion in this case.

One of the more difficult challenges of a reviewing court is discerning legislative intent when examining a statute. We have said that when examining a statute it is not our prerogative to engraft upon it a meaning the court determines to be wise or desirable. *Walton v. State*, 272 Ind. 398, 402, 398 N.E.2d 667, 670 (1980). Rather, we must attempt to determine what the legislative body intended when the statute was enacted. To facilitate this obligation courts have developed a number of rules on statutory construction, all of which are designed to give deference to the intent of the legislature. Concluding the legislature did not intend the general wrongful death statute to permit punitive damages, the majority has seized on two such constructions: (1) strict construction of statutes in derogation of the common law; and (2) legislative acquiescence. In my view the majority's conclusion cannot be sustained on these grounds.

The rule of strict construction requires the court to "presume that the legislature did not intend to make any change in the common law beyond those declared either in express terms or by unmistakable implication." *South Bend Comm. Schs. Corp. v. Widawski*, 622 N.E.2d 160, 162 (Ind.1993). Because actions for wrongful death did not exist at common law, it has been held that the wrongful death statute should be construed strictly against the expansion of liability. *Thomas v. Eads*, 400 N.E.2d 778, 780 (Ind.Ct.App.1980). I have no quarrel with this general proposition. In my view, however, its application by the majority is misplaced here. That is so because for over a century the allowance of punitive damages has been a part of the common law of this State. *See, e.g., Citizens' St. R.R. Co. of Indianapolis v. Willoeby*, 134 Ind. 563, 33 N.E. 627 (1893); *Louisville,*

*New Albany & Chi. Ry. Co. v. Wolfe*, 128 Ind. 347, 27 N.E. 606 (1891); *Humphries v. Johnson*, 20 Ind. 190 (1863). We must therefore presume that by enacting the wrongful death statute, the legislature did not intend to make any change in the common law with respect to punitive damages "beyond those declared either in express terms or by unmistakable implication." *South Bend*, 622 N.E.2d at 162.

In this case, not only does the statute exclude any reference to punitive damages, but also it declares "damages shall be in such an amount as may be determined by the court or jury, *including, but not limited to,* reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission." Ind.Code § 34–23–1–1 (1998) (emphasis added). This language simply does not support the notion that through express terms or unmistakable implication the legislature intended to wipe away an element of damage that has been in existence for a hundred plus years.

I find support for this conclusion by comparing Indiana's two other wrongful death statutes. The statute governing the wrongful death of children contains an exclusive list of damages recoverable by the child's parents or guardians. Ind.Code § 34–23–2–1(e). Because punitive damages are not a part of that list, it is clear by "unmistakable implication" that they are not recoverable. Nor are punitive damages recoverable under Indiana's newest wrongful death statute that allows death actions on behalf of non-dependent survivors of unmarried adults. Ind.Code § 34–23–1–2(c)(2)(B). Under this statute punitive damages are precluded in "express terms." *Id.* As with the other two statutes, when enacting the 1998 version of Indiana Code § 34–23–1–1, the legislature could very easily have revised it to exclude

punitive damages either by express terms or unmistakable implication. It declined to do so. I am convinced therefore that the legislature did not intend to make any change in the common law where punitive damages are concerned. Indeed the argument that the legislature and not the courts should allow punitive damages in wrongful death cases is answered by the fact that courts, as a part of the common law, created the rule that punitive damages are not allowed in wrongful death cases. The authority to change the common law rests squarely with the courts.

As for legislative acquiescence, the doctrine provides that "the failure of the legislature to change a statute after *a line of decisions of a court of last resort* giving the statute a certain construction amounts to an acquiescence by the legislature in the construction of the court and that such construction should not then be disregarded or lightly treated." *Heffner v. White*, 221 Ind. 315, 318–19, 47 N.E.2d 964, 965 (1943) (emphasis added). *See also Miller v. Mayberry*, 506 N.E.2d 7, 11 (Ind.1987); *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 28 (Ind.Ct.App.1999), *trans. denied*. There has not been a line of decisions by this Court—a court of last resort—construing the question of whether punitive damages are recoverable under the general wrongful death statute. Rather, there has been only a single case before this Court that arguably touches on the subject, namely: *Estate of Kuba v. Ristow Trucking Co., Inc.*, 508 N.E.2d 1 (Ind.1987). However, in that case the issue presented was whether a plaintiff in a wrongful death action could recover treble damages under the statute that authorized victims of certain crimes to bring a civil action seeking treble damages. *Id.* Nonetheless, even assuming *Kuba* unequivocally stands for the proposition that punitive damages are not recoverable in an action

for wrongful death, it is still but a single decision from this Court on the subject.

In sum, the majority's opinion today cannot be sustained on the grounds it asserts, namely: strict construction and legislative acquiescence. Rather, it can best be understood as an application of the doctrine of *stare decisis*. Under this doctrine the court adheres to a principle of law that has been firmly established. This is so because important policy considerations weigh in favor of continuity and predictability in the law. *In re Sandy Ridge Oil Co., Inc.*, 510 N.E.2d 667, 670 (Ind.1987). Precedent serves as a maxim for judicial restraint to prevent unjustified reversal of a series of decisions merely because the composition of the court has changed. *Id.* However, "the common law of today is not a frozen mold of ancient ideas, but such law is active and dynamic and thus changes with the times and growth of society to meet its needs." *Perkins v. State*, 252 Ind. 549, 554, 251 N.E.2d 30, 33 (1969), *overruled on other grounds by State v. Rendleman*, 603 N.E.2d 1333 (Ind.1992). It has never been the policy of this Court to close its eyes to change or to disregard reality. "When this Court has recognized that the legal and social underpinnings of a common law rule have evaporated, we have not refused to abolish or alter the rule." *Boland v. Greer*, 422 N.E.2d 1236, 1239 (Ind.1981) (Hunter, J., dissenting to denial of transfer) (citing *Brooks v. Robinson*, 259 Ind. 16, 284 N.E.2d 794 (1972) (doctrine of interspousal immunity abolished as based on outmoded legal theories); *Troue v. Marker*, 253 Ind. 284, 252 N.E.2d 800 (1969) (prohibition of wife's recovery for loss of consortium abrogated on basis of changes in the legal and social status of women); *Perkins*, 252 Ind. at 557–58, 251 N.E.2d at 35 (sovereign immunity abolished in face of changing role of government and development of insurance)). As this Court has done on

other appropriate occasions, this too is an appropriate occasion to depart from the doctrine of *stare decisis*. As the Court of Appeals observed in this case:

[I]t is illogical to allow punitive damages in personal injury actions but not in wrongful death actions. We cannot perpetuate the adage that it is cheaper to kill than to maim with regard to general wrongful death actions.

*Durham v. U–Haul Int'l,* 722 N.E.2d 355, 363 (Ind.Ct.App.2000). I agree.

In conclusion, a fair reading of the general wrongful death statute supports an interpretation that would allow punitive damages to the same extent that punitive damages are recoverable in personal injury actions. To the extent prior case authority holds otherwise, it should be overruled. I therefore respectfully dissent.

DICKSON, J., concurs.