INDIANA PATIENT'S COMPEN-
SATION FUND, Appellant–
Defendant,

v.

Beverly S. BROWN, as Executor of
the Estate of Barbara J. Frieden,
deceased, Appellee–Plaintiff.

No. 49A02–1001–CT–80.

Court of Appeals of Indiana.

Sept. 17, 2010.

Matthew W. Conner, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, IN, Attorney for Appellant.

James A. Mellowitz, Robert W. York & Associates, Indianapolis, IN, Attorney for Appellee.

Robert W. Johnson, Nicholas F. Baker, The Hastings Law Firm, Indianapolis, IN, Attorneys for Amicus Curiae, Indiana Trial Lawyers Association.

## OPINION

CRONE, Judge.

### Case Summary

Beverly Brown, as executor of the estate of Barbara Frieden, settled a medical malpractice claim for the statutory limit and then petitioned the Indiana Patient's Compensation Fund ("the Fund") for additional compensation. The trial court awarded $278,377.55, which included compensation for attorney fees, litigation costs, estate administration costs, and loss of services to Frieden's parents. The Fund contends that these damages are not authorized by the Adult Wrongful Death Statute ("AWDS").[1] We affirm.

### Facts and Procedural History

On August 16, 2004, Frieden suffered a fatal heart attack. Brown, who is Frieden's sister and the executor of her estate, filed suit against Frieden's health care providers. The suit alleged that the health care providers had negligently failed to diagnose and treat Frieden's heart disease. After several years of litigation, Brown settled with the health care providers in an amount that would allow her to petition the Fund for additional

---

1. Ind.Code § 34–23–1–2.

compensation.[2]

At the time of her death, Frieden was not married and did not have dependent children. Frieden was survived by her parents, but they were not her dependents. Brown sought to recover loss of love and companionship to Frieden's parents, medical bills, and funeral and burial expenses, which the Fund did not contest. Brown also sought to recover for loss of services to Frieden's parents, expenses relating to the administration of her estate, attorney fees, and litigation costs. The Fund did not contest the amounts requested, but argued that these damages were not available under the AWDS. The Fund therefore filed a motion for partial summary judgment on that basis. Brown filed a cross-motion for partial summary judgment.

After a hearing, the trial court ruled that all the requested damages were available under the AWDS and awarded Brown the full amount requested, $528,377.55. The court ultimately entered judgment in the amount of $278,377.55 after applying a setoff of the money received in the settlement with the health care providers. The Fund now appeals, arguing that the trial court erred by granting summary judgment for Brown.

## Discussion and Decision

### Standard of Review

Our standard of review of a summary judgment is well settled:

When determining the propriety of an order granting summary judgment, we use the same standard of review as the trial court. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Once the moving party meets these two requirements, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. If the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we must affirm. Additionally, where the issue presented on appeal is a pure question of law, we review the matter de novo.

*Ryan v. Brown*, 827 N.E.2d 112, 116–17 (Ind.Ct.App.2005) (quotations and citations omitted).

This case hinges on the interpretation of the AWDS. Statutory interpretation is a pure question of law. *Gaudin v. Austin*, 921 N.E.2d 895, 896 (Ind.Ct.App. 2010).

Our goal when interpreting a statute is to determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. If a statute contains clear and unambiguous language, it is not subject to judicial interpretation. Rather, we must give such a statute its plain and clear meaning.

*In re P.F.*, 849 N.E.2d 1220, 1224 (Ind.Ct. App.2006) (quotations and citations omitted).

---

**2.** *See* Ind.Code § 34–18–14–3(b) (liability of health care providers is limited to $250,000 per occurrence).

### History of Wrongful Death

Our supreme court has described the origin of wrongful death claims as follows:

At common law, a cause of action was extinguished by the death of the plaintiff. Because the victim was viewed as the only person wronged by a negligent killing, even a defendant whose negligence caused the plaintiffs death was insulated from liability. This inequity gave rise to wrongful death statutes, first in England in 1846, and soon thereafter in every United States jurisdiction. The wrongful death action is entirely a creature of statute. Indiana's statute was first adopted in 1852, then again in 1881. It has since been amended on nine different occasions, most recently in 1998.

*Durham ex rel. Estate of Wade v. U–Haul Int'l,* 745 N.E.2d 755, 758 (Ind.2001) (citations omitted).

 This General Wrongful Death Statute ("GWDS") is currently codified at Indiana Code Section 34–23–1–1 and reads as follows:

When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense[s] shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. If such decedent depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him, the damages inure to the exclusive benefit of the person or persons furnishing necessary and reasonable hospitalization or hospital services in connection with the last illness or injury of the decedent, performing necessary and reasonable medical or surgical services in connection with the last illness or injury of the decedent, to a funeral director or funeral home for the necessary and reasonable funeral and burial expenses, and to the personal representative, as such, for the necessary and reasonable costs and expenses of administering the estate and prosecuting or compromising the action, including a reasonable attorney's fee, and in case of a death under such circumstances, and when such decedent leaves no such widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees.

Thus, the GWDS addresses two scenarios: in the first, the decedent dies leaving a

surviving spouse, dependent children, or dependent next of kin; in the second, the decedent has no surviving spouse or dependents, but there are costs and expenses associated with the death that require payment to service providers.

In 1987, the legislature enacted the Child Wrongful Death Statute ("CWDS"), which applies if the decedent is

an unmarried individual without dependents who is:

(1) less than twenty (20) years of age; or

(2) less than twenty-three (23) years of age and is enrolled in a postsecondary educational institution or a career and technical education school or program that is not ·a postsecondary educational program.

Ind.Code § 34–23–2–1. Damages recoverable under the CWDS include loss of the child's services, loss of the child's love and companionship, health care expenses, funeral and burial expenses, counseling expenses for surviving parents and minor siblings, uninsured debts of the child, probate administration expenses, and attorney fees. Ind.Code § 34–23–2–1(f).

In *Miller v. City of Hammond*, we held that nondependent parents of a twenty-three-year-old college student could not recover under the wrongful death statutes in effect at the time. 691 N.E.2d 1310, 1313 (Ind.Ct.App.1998), *trans. denied.* The following year, the legislature enacted the AWDS, which provides in pertinent part:

(a) As used in this section, "adult person" means an unmarried individual:

(1) who does not have any dependents; and

(2) who is not a child (as defined in IC 34–23–2–1).

(b) If the death of an adult person is caused by the wrongful act or omission of another person, only the personal representative of the adult person may maintain an action against the person whose wrongful act or omission caused the death of the adult person.

(c) In an action to recover damages for the death of an adult person, the damages:

(1) must be in an amount determined by a:

(A) court; or

(B) jury;

(2) may not include:

(A) damages awarded for a person's grief; or

(B) punitive damages; and

(3) may include but are not limited to the following:

(A) Reasonable medical, hospital, funeral, and burial expenses necessitated by the wrongful act or omission that caused the adult person's death.

(B) Loss of the adult person's love and companionship.

(d) Damages awarded under subsection (c)(3)(A) for medical, hospital, funeral, and burial expenses inure to the exclusive benefit of the adult person's estate for the payment of the expenses. The remainder of the damages inure to the exclusive benefit of a nondependent parent or nondependent child of the adult person.

■■■ Because the wrongful death statutes are in derogation of the common law, their provisions must be construed narrowly. *Butler v. Ind. Dep't of Ins.*, 904 N.E.2d 198, 202 (Ind.2009). "In particular, such a statute is to be construed 'strictly *against the expansion* of liability.' " *Id.* (quoting *Bolin v. Wingert*, 764 N.E.2d 201, 207 (Ind.2002)) (emphasis in *Butler* ).

The AWDS does not explicitly authorize or prohibit an award of attorney fees, litigation costs, estate administration costs, or loss of services to nondependents. By stating that damages "may include but are not limited to" the specified damages, the legislature created a non-exhaustive list of available damages. *See id.* at 202–03. Therefore, we must determine whether, by using this open-ended language, the legislature intended to authorize an award of attorney fees, litigation costs, estate administration costs, or loss of services to nondependents.[3]

The GWDS contains similar open-ended language creating a non-exhaustive list of damages. Our supreme court addressed the meaning of this language in *Durham*, 745 N.E.2d 755, and *Estate of Kuba v. Ristow Trucking Co.*, 508 N.E.2d 1 (1987). In *Kuba*, the court addressed whether treble damages under Indiana Code Section 34–4–30–1 are available in wrongful death actions:

> While the wrongful death statute does include the phrase "but not limited to", this language can not [sic] be broadly construed to permit any perceivable damage claim to be available in a wrongful death action. The "loss" recoverable by a claimant must be of the same genre as those enumerated in the statute. The loss must evolve from a deprivation to a survivor as a result of the death and the value assigned is measured by the value of that loss.
>
> The interests identified as served by the wrongful death statute are economic in nature and are appropriate to make responsible tortfeasors pay the doctor, hospital and undertaker and to fulfill the expectancy of those related human beings who are dependent upon the decedent's future earnings. Damages recoverable under the wrongful death statute thus serve a compensatory goal. The damages which are not expressly enumerated in the statute, but are nevertheless deemed recoverable, arise strictly from the individual relationship between the decedent and a survivor. The treble damage statute by contrast is punitive in nature, imposing a greater amount of damages than those actually incurred due to the violation of a criminal statute.

508 N.E.2d at 2.

*Durham* concerned whether punitive damages are available under the GWDS. This Court acknowledged that previous cases had held that punitive damages were not available, but noted that they were not explicitly prohibited by the statute. *See Durham*, 745 N.E.2d at 759 (discussing *Durham v. U–Haul Int'l*, 722 N.E.2d 355, 358 (Ind.Ct.App.2000)). We concluded that public policy supported allowing punitive damage awards under the GWDS. *See id.* at 758 (discussing *Durham*, 722 N.E.2d

---

**3.** Brown and amicus, Indiana Trial Lawyer's Association, note that in *Indiana Patient's Compensation Fund v. Patrick,* our supreme court stated that the Fund "readily acknowledges that the AWDS entitles Father [a nondependent parent] to recover actual pecuniary damages and $300,000 in non-pecuniary damages." 929 N.E.2d 190, 192 (Ind.2010). They contend that the Fund is estopped from arguing that there are limitations on the type of pecuniary damages recoverable pursuant to the AWDS based on the position that it took in *Patrick.* We disagree. The issue in *Patrick* was whether a nondependent father could recover damages for emotional distress pursuant to the Medical Malpractice Act; the father conceded that he could not recover those damages pursuant to the AWDS. The trial court had awarded $16,531.66 for medical, hospital, funeral, and burial expenses, and the Fund did not challenge that award on appeal. We are not persuaded that the Fund intended to take the position that any plaintiff pursuing an action under the AWDS could recover any type of pecuniary damage, as that was not an issue in *Patrick.*

at 360). Our supreme court disagreed, looking to the history of the amendments to the statutory scheme. In 1986, we had held that neither punitive damages nor recovery for love and affection for the death of a child was a compensable element of recovery. *Andis v. Hawkins*, 489 N.E.2d 78 (Ind.Ct.App.1986). Soon thereafter, the legislature enacted the CWDS, which allowed recovery for the loss of services, companionship, and affection of a child, but which did not specifically permit recovery for punitive damages. Thus, our supreme court concluded that the legislature had not intended to change the rule that punitive damages cannot be recovered in a wrongful death action. *Durham*, 745 N.E.2d at 761. The court reaffirmed its holding in *Kuba* that the damages recoverable but not explicitly listed in the statute must be compensatory in nature. *Id.* at 763.

In *Butler*, our supreme court touched on the meaning of the "but not limited to" language in the AWDS. James Butler, as personal representative for Nondis Butler, sought to collect the total amount of medical expenses billed to Nondis. The Fund argued that it should have to pay only the amount ultimately accepted by the medical providers after adjustments made by insurance, Medicare, and Medicaid. The AWDS specifies that "[r]easonable medical, hospital, funeral, and burial expenses necessitated by the wrongful act or omission that caused the adult person's death" may be recovered. Ind.Code § 34–23–1–2(c)(3)(A). The court concluded that the statute "does not employ the common law standard to generally authorize recovery for the reasonable *value* of medical care and treatment," but rather "authorizes recovery only of reasonable medical 'expenses necessitated' by another's wrongful conduct." *Butler*, 904 N.E.2d at 202. Therefore, when charges are billed but settled for a lower amount, the difference is not a " 'necessitated' expense." *Id.*

The court rejected Butler's argument that the "but not limited to" language should be read to expand the amount of medical expenses recoverable under the statute:

> This open-ended phrase permits recovery of damages other than those items designated in subsections (c)(3)(A) and (c)(3)(B), but does not direct the expansion of the circumscribed damages defined within (A) and (B). The "include but not limited to" phrase does not expand the class of such necessitated expenses.

*Id.* at 202–03.

### Attorney Fees, Litigation Costs, and Estate Administration Costs

■ This court previously addressed the availability of attorney fees under the AWDS in *Hillebrand v. Supervised Estate of Large*, 914 N.E.2d 846 (Ind.Ct.App. 2009). Charlotte Large died in a car accident. Her personal representative pursued a wrongful death action and obtained a settlement, $12,016.72 of which was to be paid to Large's estate, and $47,983.28 of which was to be paid to Ronald Hillebrand, Large's sole surviving child. The personal representative then requested that her attorney fees and personal representative fees be paid out of the entire settlement. Hillebrand argued that these fees should be paid by the estate.

To determine how the fees should be paid, we examined the AWDS. To determine the scope of the AWDS, we looked to *Thomas v. Eads*, in which we discussed the history of the GWDS. 400 N.E.2d 778, 782–83 (Ind.Ct.App.1980). In *Thomas*, we noted that earlier versions of the statute had specified which damages were available, but the language was now open-ended. *Id.* In a footnote, the *Thomas* court

stated, "Because the list of recoverable damages is expressly illustrative and not exclusive, we interpret the statute to allow in every case the recovery of the reasonable costs of administering decedent's estate and prosecuting or compromising the action, including attorney's fees." *Id.* at 783 n. 4.

The *Hillebrand* court followed *Thomas* and determined that attorney fees are available in all wrongful death actions:

> Although we are not in the habit of deciding cases in footnotes and a footnote's legal value is merely dicta at best, we agree with the reasoning in *Thomas*. Both sections of the wrongful death act list the damages as "may include but are not limited to the following." *See* I.C. §§ 34–23–1–1;–2(c)(3). Because this list of recoverable damages in a wrongful death action is expressly illustrative and not exclusive, we interpret the statute to allow in every situation—regardless whether the decedent leaves a widow or widower, dependents or dependent next of kin—the recovery of the reasonable costs of administering the decedent's estate and prosecuting or compromising the action, including attorney fees....
>
> We therefore hold today that the damages awarded in a wrongful death action may include the reasonable attorney fees necessary to pursue the action and these damages inure to the exclusive benefit of the estate for the payment of such costs.

914 N.E.2d at 850–51. Based on our conclusion that attorney fees are recoverable under the AWDS, we determined that the attorney fees incurred in pursuing the action should be paid from the settlement. *Id.* at 851.

Recently, a different panel of this Court determined that attorney fees are not available under the AWDS. *McCabe v. Comm'r, Ind. Dep't of Ins.*, 930 N.E.2d 1202 (Ind.Ct.App.2010), *trans. sought.* *McCabe* found *Hillebrand* distinguishable because it was "a probate case deciding from which probate assets attorney fees incurred in obtaining a wrongful death settlement should be paid" and because it relied on *Thomas*, which was decided before the AWDS was enacted. *Id.* at 1208. Instead, *McCabe* relied on language from *Butler*:

> [T]he *Butler* Court limited its holding allowing for recovery of damages not specifically provided for in the AWDS when it stated that the phrase ["may include but are not limited to"] "does not direct the expansion of the circumscribed damages defined" in the AWDS. [*Butler*, 904 N.E.2d at 203.] Importantly, the court concluded that the "include but not limited to" language *does not expand* the class of such necessitated expenses." *Id.* at 203 (emphasis added). We believe that allowing the recovery of attorney fees under the AWDS would do just that, expand the circumscribed damages defined by the General Assembly.

*Id.* at 1209.

Judge Riley dissented, disagreeing with the majority's interpretation of *Butler*. Judge Riley contended that, in context, *Butler*'s reference to "circumscribed damages" and "necessitated expenses" were references to the damages that are explicitly listed in the AWDS. *Id.* at 1210–11. In other words, *Butler* held that because the AWDS specifies that medical expenses must be necessary, the phrase "may include but are not limited to" could not be used to expand the class of medical expenses recoverable under the AWDS. *See id.* Judge Riley noted that *Butler* reiterated that the AWDS permits recovery of damages other than those enumerated in subsections (c)(3)(A) and (c)(3)(B). *Id.* at 1211.

Looking to *Kuba*, *Butler*, and *Hillebrand*, Judge Riley concluded that attorney fees are available under the AWDS:

> [T]he damages which may be included must arise from a pecuniary loss to a survivor as a result of the decedent's death and must be compensatory in nature. Viewing attorney fees in this regard, I note that these fees are characterized as compensatory as they reimburse the personal representative for the costs incurred from the administration of the wrongful death estate and the prosecution of the claim. These costs are pecuniary losses necessitated by the wrongful death; without the wrongful death these costs would not have been incurred.

*Id.* at 1212. After *McCabe* was decided, another panel of this court determined that attorney fees and litigation costs could be recovered in an action under the AWDS, employing reasoning similar to Judge Riley's. *Hematology–Oncology of Indiana, P.C. v. Fruits*, 932 N.E.2d 698, 700–04 (Ind.Ct.App.2010).

We agree with *Fruits* and Judge Riley's opinion in *McCabe*. *Butler* does not stand for the proposition that no damages may be recovered under the AWDS unless they are explicitly mentioned. *Butler* simply holds that when there is specific language in the statute qualifying the amount of damages available—such as medical expenses *necessitated by* the wrongful act or omission—the more general language in the statute cannot be used to expand that category of damages. *See Butler*, 904 N.E.2d at 202–03. Furthermore, we do not find *McCabe*'s attempt to distinguish *Hillebrand* persuasive. Although the ulti-mate issue in *Hillebrand* was which assets should be used to pay the attorney fees, we clearly reached that conclusion by first determining whether attorney fees are available under the AWDS. *See Hillebrand*, 914 N.E.2d at 848, 851. We do not think it is problematic that *Hillebrand* relied, in part, on *Thomas*; given the paucity of decisions interpreting the phrase "include but are not limited to" in the AWDS, it was reasonable to look to decisions interpreting similar language in the GWDS.

The *McCabe* majority also found that the "American Rule" supported its conclusion that attorney fees are not available under the AWDS. 930 N.E.2d at 1209. Pursuant to the American Rule, parties are required to pay their own attorney fees "absent an agreement between the parties, statutory authority, or other rule to the contrary." *Town of Georgetown v. Edwards Cmty., Inc.*, 885 N.E.2d 722, 726 (Ind.Ct.App.2008). The Fund contends that *Georgetown* holds that the statutory language authorizing attorney fees must be explicit.[4] We disagree. In *Georgetown*, we interpreted Indiana Code section 36-4-3-15.5(c), which deals with annexation procedures and provides that "[c]osts follow judgment." As the statute explicitly authorized costs, but was silent as to attorney fees, we concluded that attorney fees were not authorized. *Georgetown*, 885 N.E.2d at 726. Unlike the AWDS, the statute we interpreted in *Georgetown* did not contain open-ended language describing the damages that are available.

The AWDS must be narrowly construed, but the legislature used open-ended language to describe the damages available under the statute. Decisions discussing

---

4. Brown and amicus, Indiana Trial Lawyers Association, assert that the Fund has waived any argument based on the American Rule because it was not raised before the trial court. However, the American Rule was discussed in *McCabe*, which was properly submitted as additional authority on appeal. As we feel it is appropriate to state the reasons for our disagreement with *McCabe*, we choose to address the argument.

the history and purpose of wrongful death actions, such as *Kuba*, have indicated that the damages should be compensatory in nature. Therefore, treble and punitive damages have been disallowed. *Durham*, 745 N.E.2d at 761; *Kuba*, 508 N.E.2d at 2. By contrast, attorney fees, probate administration costs, and litigation costs are compensatory damages that remedy actual pecuniary losses. Therefore, we find no compelling reason why these damages should not be allowed.[5]

### Loss of Services

■ It appears that we have never addressed whether a nondependent can recover for loss of services under the AWDS. The AWDS explicitly authorizes an award for "[l]oss of the adult person's love and companionship," but is silent regarding loss of services. Ind.Code § 34–23–1–2. The GWDS, by comparison, mentions neither loss of love and companionship nor loss of services. In *Durham*, our supreme court held that "loss of consortium is a proper element of damages in a wrongful death action for the death of a spouse" pursuant to the GWDS. 745 N.E.2d at 765. The court defined "consortium" as follows:

> [C]onsortium has been defined to include both tangible and intangible elements. In addition to the provision of material services, consortium includes both conjugal and other "elements of companionship," including "service," "aid," "fellowship," "companionship," "company," "cooperation," and "comfort." 41 Am.Jur.2d *Husband and Wife* § 7(1995). Indiana courts have likewise defined consortium to include both material services, i.e., calculable and monetary damages, as well as love, care, and affection.

*Id.* (some citations omitted); *see also* BLACK'S LAW DICTIONARY, 8th ed. 2004 (defining "loss of consortium" as a "loss of the benefits that one spouse is entitled to receive from the other, including companionship, cooperation, aid, affection, and sexual relations" or a "similar loss of benefits that

---

**5.** We note there is some confusion as to whether the GWDS and AWDS are separate, mutually exclusive remedies, or whether they should be read together. The GWDS and AWDS both contain provisions relating to adults with no dependents, but only the GWDS explicitly provides for attorney fees. Brown contends that the AWDS supplements the GWDS, and the two should be read together in the case of an adult who has died without dependents. Indiana Civil Pattern Jury Instruction 11.09, which is titled "Comparative Fault—Wrongful Death—Unmarried Adult—Non–Dependent Parents or Children," appears to have adopted this approach, as it commingles language from the AWDS and GWDS. Amicus, Indiana Trial Lawyers Association, appears to take the position that, although the statutes are separate, they are in pari material, and therefore, we should look to the GWDS to resolve ambiguities in the AWDS.

The Fund, on the other hand, contends that the GWDS and AWDS are separate, mutually exclusive remedies. The Fund argues that the AWDS applies when there are nondependent parents or children who are eligible to recover for loss of the decedent's love and companionship. The Fund asserts that the GWDS applies if there is no surviving parent or child. According to the Fund, the justification for allowing attorney fees in the latter case is to give the personal representative an incentive to pursue damages for medical, hospital, funeral, and burial expenses on behalf of those who have rendered services.

The *McCabe* majority stated that the GWDS, AWDS, and CWDS provide disjunctive remedies. 930 N.E.2d at 1209. *Fruits* discussed the GWDS and the AWDS, but stated in a footnote, "As we find attorney's fees are available under either [statute], we need not address Hematology's independent argument that the [GWDS] does not apply in this case." 932 N.E.2d 698 at 702 n. 2. As the GWDS and AWDS both contain provisions relating to adults who die without dependents, we believe that the two statutes should be read in harmony, however, we encourage the legislature to revise the statutes to more clearly reflect its intent.

one is entitled to receive from a parent or child"). Thus, an award for loss of services as a subcategory of loss of consortium has been permitted under the GWDS, although the statute does not explicitly authorize such an award. *Durham,* 745 N.E.2d at 765.

As described above, Indiana courts have prohibited awards of non-pecuniary damages in wrongful death actions when not explicitly authorized by statute. In *Andis,* we stated:

> Pecuniary loss is the foundation of a wrongful death action, and the damages are limited to the pecuniary loss suffered by those for whose benefit the action may be maintained. "Pecuniary loss has been defined as the reasonable expectation of pecuniary benefit from the continued life of the deceased, to be inferred from proof of assistance by way of money, services or other material benefits rendered by the deceased prior to his death."

489 N.E.2d at 82 (citations omitted). As a practical matter, it may be difficult for a nondependent parent to prove that loss of an adult child's services resulted in pecuniary loss. In this case, the Fund has not contested that Frieden's parents suffered a pecuniary loss from the loss of her services, but instead has argued that such damages are categorically unavailable under the AWDS. We cannot agree. Loss of services, when proved, would constitute a pecuniary loss of the type contemplated by the AWDS. Therefore, we affirm the judgment of the trial court.

Affirmed.

FRIEDLANDER, J, and BARNES, J., concur.