OPINION
MAY, Judge.
The Indiana Patient's Compensation Fund ("the Fund") appeals an order in this adult wrongful death action awarding Judy Holcomb, as personal representative of the estate of Mable Louise Cochran ("the Estate"), $50,440.00 in attorney fees to be paid by the Fund. The Fund argues on appeal the amount of fees exceeds that permitted by Ind.Code § 34-18-18-1, *990 which provides: "When a plaintiff is represented by an attorney in the prosecution of the plaintiff's claim, the plaintiff's attorney's fees from any award made from the patient's compensation fund may not exceed fifteen percent (15%) of any recovery from the fund."
As attorney fees are recoverable as pecuniary damages in an adult wrongful death action, we cannot adopt the Fund's position that the total amount of attorney fees recoverable may be only 15% of what is taken from the Fund, without regard to whether or to what extent that amount includes attorney fees on the amount recovered before the Fund is reached. Instead, the 15% limitation applies only to new monies from the fund, not monies that otherwise might be characterized as attorney fees on the amount recovered before the Fund is reached, but that is included as damages when applied to the Fund. In other words, the 15% limitation does not apply to the assessment of damages caused by the tortfeasor or the calculation of excess damages of any type from the Fund.
However, as explained below, the trial court's award in the case before us does not accurately reflect either the proper amount of attorney fees or the proper allocation of money awarded from the fund. We must therefore reverse and remand.
FACTS AND PROCEDURAL HISTORY[1]
Mable Cochran died in January 2011, and Holcomb, as personal representative, opened the Estate to pursue a wrongful death claim against the Chase Center Nursing Home. She brought the action under the Adult Wrongful Death Statute ("AWDS"), Ind.Code § 34-23-1-2, which provides for an action for the wrongful death of an unmarried adult without dependents. The AWDS permits the decedent's estate to recover medical and funeral expenses and allows the decedent's nondependent parents or children to recover damages for loss of love and companionship. McCabe v. Comm'r, Indiana Dep't of Ins., 949 N.E.2d 816, 818 (Ind.2011). Holcomb hired Gray Robinson Ryan and Fox ("Gray Robinson") to represent the Estate.
The original agreement with Gray Robinson provided the Estate would pay Gray Robinson the following:
A sum of money equal to Forty Percent (40%) received or recovered upon this claim, whether by way of settlement or by judgment.
In the event the health care provider is qualified under the [Medical Malpractice Act], then the fee shall be a sum of money equal to Fifteen Percent (15%) received or recovered upon this claim, whether by way of settlement or by judgment paid from [the Fund]. The percentage of attorney's fees on the first Two Hundred and Fifty Thousand Dollars ($250,000) received on behalf of any defendant shall be adjusted to whatever Percent is necessary, so that the total attorney's fees for all amounts recovered by way of settlement or judgment shall be as much as, but not to exceed 40%.
(App. at 6.)
The nursing home settled the Estate's claim for the $250,000 limit of its liability,[2] *991 and the Estate was then entitled to seek excess damages from the Fund pursuant to Ind.Code $ 34-18-15-8. The trial court approved the settlement, from which $74,800.40 was to be paid in attorney fees.
The Estate then petitioned for a determination of the amount of excess damages due from the Fund, which damages it characterized as "including compensation for loss of love and companionship for the decedent's adult children, last medical, funeral and burial expenses, and costs of administration, including expenses of litigation and attorneys' fees." (App. at 14.) The Estate and the Fund reached a settlement agreement on December 28, 2011, that provided the parties were settling "their dispute regarding [the Estate's] wrongful death damages, except for attorney's fees [.]" (Id. at 21) (emphasis added).
Pursuant to the agreement the Fund would pay the Estate $101,166.89. The settlement characterized the Estate's damages as follows:
Loss of Love and Companionship $300,000.00
Funeral/Burial Expenses 8,900.00
Medical Expenses 45,759.44
Litigation Expenses 1,507.45
TOTAL DAMAGES: $351,166.89
Amount paid by underlying provider (250,000.00)
Amount paid by [the Fund] $101,166.89.
(App. at 36.)
The trial court scheduled a hearing on the remaining issue of attorney fees, and Gray Robinson filed an affidavit that averred it had expended 126.1 hours on the case through January 80, 2012 and that additional hours were being expended in preparation for the hearing. Counsel opined that a reasonable hourly[3] rate was $400.00.
At the hearing, the Estate noted attorney fees are now recoverable as wrongful death damages and argued:
So all those damages [including attorney fees] go into the pot of liability of the ... health care provider, for the excess damages against the Fund of $250,000-dollars, underlying limit is subtracted. And since the Fund has paid all of the other damages in this case that leaves the $50,440 [4] as additional excess damages. Under this statute that the Fund is relying on the [Estate's] attorney would be entitled to charge up to 15 per cent of that as an additional fee.
*# * * * * *#
[The statute 34-18-18-1 just addresses what an attorney can charge a client for a recovery from the Fund{[;] it in no way addresses the underlying damages caused by the tort feasor [sic].
(Tr. at 10-11.)
The Fund did not dispute the agreed-upon underlying amount of damages as stated in the settlement, which amount did not include attorney fees; nor did it challenge the reasonableness of the $50,400 in attorney fees Gray Robinson was claiming. But it argued:
Rules of statutory construction do not support payment of the entire award of attorney fees from the [Fund].... [Ind. *992 Code § 34-18-18-1] places ... a strict restriction on the amount that can be recovered for an act of mal practice [sic] in the state of Indiana. So the fact that the legislator [sic] chose to include another strick [sic] restriction on the amount of fees that can be recovered by Plaintiff's counsel is not unusual, nor is it inconsistent with the rest of the intent of [the Medical Malpractice Act]. The meaning of [Ind.Code § 34-18-18-1] is plain and unambiguous and ... means exactly what it says. It means that of the amount paid from [the Fund] only 15 percent of it can be fees.
(Id. at 21-28.) The $50,400 Gray Robinson was claiming, the Fund argued, violated the statute because it was a "request that [the Fund] pay an amount that is 33 per cent attorney fees." (Id. at 19.) The Fund urged the trial court to award only $17,852.98 as attorney fees. It reached that figure by dividing $101,166.89, the amount the parties agreed would be the Fund's liability without attorney fees, by 85, then multiplying that amount by fifteen percent.
The trial court awarded $50,440.00, the amount Gray Robinson characterized as "additional excess damages," (id. at 11), in attorney fees. In its findings and conclusions it found:
$101,166.89 in excess compensation was previously paid by the Fund. Pursuant to this agreement, the parties compromised and settled their "dispute regarding [the Estate's] wrongful death damages, except for attorney's fees[.]"
## * * *s * *#
[The Estate] requests an assessment of $50,400.00 in reasonable attorney's fees as a wrongful death pecuniary damage caused by the underlying tortfeasor payable by the Fund as additional excess compensation.
(App. at 46.)
In its conclusions the court quoted our Indiana Supreme Court: "[Alttorney fees, probate administration costs, and litigation costs are compensatory damages that remedy actual pecuniary losses. Therefore, we find no compelling reason why these damages should not be allowed." (Id. at 47) (quoting Indiana Patient's Comp. Fund v. Brown, 949 N.E.2d 822, 824 (Ind.2011)). The trial court concluded attorney fees are pecuniary losses caused by a tort-feasor that should be compensated just like other items of damages. It noted Ind.Code § 34-18-18-1 "does not limit the amount of pecuniary damages caused by the tortfeasor, including attorney fees, for purposes of determining excess damages payable by the Fund." (Fd. at 47-48.) It therefore concluded the amount Gray Robinson claimed, $50,400, was "properly assessable as wrongful death damages ... payable as excess compensation by the fund." (Id. at 48.)
DISCUSSION AND DECISION
The trial court was correct that the Estate's attorney fees were properly assessable as wrongful death damages payable as excess compensation by the Fund and were not limited to 15% of the $101,166.89 the parties agreed would be the Fund's liability without attorney fees. But neither the $17,852.98 suggested by the Fund nor the $50,440.00 amount premised on Gray Robinson's hourly rate appears to fairly or accurately reflect either the full amount of attorney fees the Estate paid or an amount properly recoverable from the Fund in light of the statutory limitation. We must therefore remand for a recalculation of the fee amount.
This case presents a prime example of what happens when statutes collide-the *993 result is potentially prejudicial to both sides and likely unacceptable to both. The journey leading to this collision began in 1998, when the legislature added Ind.Code § 34-18-18-1 to the Medical Malpractice Act. That statute addresses "plaintiff's attorney's fees from any award made from the patient's compensation fund" and imposes the 15% limitation at issue in the case before us. The statute does not address whether there is a limit on the amount of attorney fees in the form of damages that may be recovered from any settlement or award that made it possible to reach the Fund.[5]
Then, in 1999, our legislature promulgated the Adult Wrongful Death Statute (AWDS), under which the Estate brought this action. In 2011, our Indiana Supreme Court held attorney fees may be included as damages under the AWDS. See Hematology-Oncology of Indiana, P.C. v. Fruits, 950 NE2d 294 (Ind.2011); McCabe, 949 N.E.2d at 821.
It seems apparent the legislature, when it imposed the 15% limitation under the Medical Malpractice Act in 1998, did not contemplate the situation now before us-that years later, attorney fees would be recognized as adult wrongful death damages or that a plaintiff's counsel would, as the Estate's counsel does here, present a claim for attorney fees both as a part of the damages and also as a separate amount recoverable from the Fund under Ind.Code § 34-18-18-1.
In McCabe and Fruits, our Indiana Supreme Court held reasonable attorney fees incurred in the prosecution of an action under the AWDS are within the damages permitted by the statute. Whether attorney fees were damages had been in doubt, because the general wrongful death statute, enacted in 1852,[6] had for some time been explicit that attorney fees were recoverable as damages. By contrast, the AWDS, promulgated in 1999 and effective January 1, 2000, did not explicitly include or exclude attorney fees as damages. Holcomb's action was brought in August 2011, under the AWDS, soon after Fruits and McCabe were decided.
In the case before us, the Fund and the statute limiting recovery of attorney fees from the Fund were implicated because the parties entered into a partial settlement that exceeded $250,000 and therefore gave rise to the Fund's obligation to pay. But that settlement explicitly excluded attorney fees from its calculation of damages. The settlement characterized Holcomb's damages as follows:
Loss of Love and Companionship $300,000.00
Funeral/Burial Expenses 3,900.00
Medical Expenses 45,759.44
Litigation Expenses 1,507.45
TOTAL DAMAGES: $351,166.89
Amount paid by underlying provider (250,000.00)
Amount paid by [the Fund] $101,166.89.
*994 (App. at 36.) But the itemization in that settlement does not accurately reflect the original agreement between the Estate and its counsel, which was explicit that counsel would be paid 40% of any recovery. The original agreement between the Estate and counsel referred to a fee of 15% of the amount recovered from the Fund, then provided the percentage of attorney fees on the first $250,000 would "be adjusted to whatever Percent is necessary, so that the total attorney fees for all amounts recovered" would be 40%. (App. at 6.) Nor does the itemization reflect that from the settlement that recovered the first $250,000, counsel had already been paid $74,800.40.[7] (App. at 9.)
Once the $250,000 threshold amount was reached, negotiation with the Fund began. A partial settlement was reached, as expressed in the itemization above, that provided for a payment from the Fund of $101,166.89, with the question of attorney fees deferred for determination by the trial court.
For reasons not apparent from the record, in its argument before the trial court for attorney fees, the Estate's counsel premised its request not on the original contingency fee agreement but instead on an hourly fee basis. Counsel stated in an affidavit that the amount of attorney fees incurred up to that time was $50,440.00.[8] There was no request for fees expended in the action to recover from the Fund, nor was there a disclosure of the amount of fees counsel was paid from the Fund settlement.
The Fund notes that, as reflected in the partial settlement, it was obliged to pay $101,166.89, not including attorney fees. It then takes the position that because Ind.Code § 34-18-18-1 says attorney fees cannot exceed 15% of any recovery from the Fund, the Estate's counsel could be awarded only $17,852.98. Paying Gray Robinson the $50,440.00 it asked for, the Fund argues, would make its award 383% of the Fund recovery, which the statute does not permit.
Neither amount appears to fairly or accurately reflect the attorney fees the Estate incurred in this adult wrongful death case. The $50,440.00 the trial court awarded seems not to reflect either the full amount of the attorney fees the Estate paid or an amount properly recoverable from the Fund in light of the statutory limitation. The $17,852.98 figure proposed by the Fund is not consistent with the reasoning in Fruits McCabe, and Brown that attorney fees are compensatory damages that remedy actual pecuniary losses.
The record and statements at oral argument indicate the Estate paid attorney fees of $74,800.40. The Estate represented at oral argument that the additional $50,440.00, which the trial court designated as attorney fees to be included in the Fund recovery, would go back to the Estate and no additional fees would be taken from it. But under these calculations, the Estate paid $74,800.40, yet it received reimburse *995 ment of only $50,440.00 for fees, suggesting the Estate paid $24,360.40 it did not recover.[9]
As explained above, it seems apparent the legislature did not, when it imposed the 15% attorney fee limitation, contemplate that attorney fees might subsequently be determined to be a form of damages. But to the extent the intent of the statute is to limit the amount of attorney fees recoverable from the Fund to 15% of any recovery from the Fund, the trial court's result is inconsistent with that intent. Under this caleulation ($74,800.40 minus $50,440.00), which results in the outstanding fees of $24, 360.40 that remain unre-covered by the Estate, the 15% statutory limitation is exceeded, as $24,860.40 is more than 15% of the $101,166.89 recovery from the Fund.
Under the facts the parties have placed before us, including an agreement regarding the Fund's liability that purported to include no attorney fees as damages, it is impossible to reach a result that is fair to the Estate and to its counsel, yet consistent with the statutory 15% limitation. As the trial court's award does not accurately reflect either the proper amount of attorney fees or proper allocation of money awarded from the Fund, we must reverse and remand for further proceedings consistent with this opinion.
Reversed and remanded.
PYLE, J., concurs.
ROBB, C.J., dissents with separate opinion.

. We heard oral argument May 24, 2013. We commend counsel on the quality of their advocacy.

. Ind.Code § 34-18-14-3(b) provides: "A health care provider qualified under this article ... is not liable for an amount in excess of two hundred fifty thousand dollars ($250,000) for an occurrence of malpractice."

. For reasons not apparent from the record, in its argument before the trial court for attorney fees, the Estate's counsel premised its request not on the original contingency fee agreement but instead on an hourly fee basis.

. That amount appears to reflect the amount referred to in the Gray Robinson affidavit 126.1 hours multiplied by Gray Robinson's hourly rate of $400.

. The Medical Malpractice Act limits the liability of a qualified health care provider whose medical negligence proximately caused death to $250,000. Ind.Code § 34-18-14-3(b). If a judgment or settlement fixes damages in excess of a qualified health care provider's liability, then a plaintiff may recover excess damages from the Fund. Ind.Code § 34-18-14-3(c). The total amount recoverable for an act of malpractice occurring after June 30, 1999, and resulting in injury or death of a patient may not exceed $1,250,000. Ind.Code § 34-18-14-3(a)(3). The malpractice for which the Estate recovered occurred after June 30, 1999.

. The general wrongful death statute, enacted in 1852 and again in 1881, was amended in 1899, 1933, 1937, 1949, 1951, 1957, 1965, 1982, and 1998. Durham ex rel. Estate of Wade v. U-Haul Int'l, 745 N.E.2d 755, 761 n. 3 (Ind.2001).

. The $74,800.40 figure represents 40% of $187,001.00, the present value of a settlement that included a lump-sum payment and an annuity.

. We acknowledge the Fund's agreement this amount is reasonable. Still, the figure is puzzling, as the contingency fee agreement allowed a fee of 40%, and 40% had in fact been subtracted from the first part of the settlement. Although difficult to believe, one must wonder whether the claim for $50,440.00 is based on an hourly rate or whether, in light of the prior payment of $74,800.40, that claim reflects an acknowledgment the higher figure was not reasonable and amounts to an admission the fees were excessive.

. The Estate's counsel advised the trial court "no additional attorney's fees would be claimed from the additional recovery of excess damages for attorney's fees." (Br. of Appellee at 10 n. 2.)